# EXHIBIT 2



FILED
ORANGE COUNTY SUPERIOR COURT
AUG 1 0 2007
ALAN SLATER, Executive Officer/Clerk
K. Barnstein
BY K. BARNSTEIN

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

| | |
|---|---|
| IN RE ISIDRO ROMERO,<br>Petitioner,<br><br><br><br><br><br>ON HABEAS CORPUS, | CASE NO. M-11411 (C-54812)<br>ORDER DENYING<br>HABEAS CORPUS |

TO THE PEOPLE OF THE STATE OF CALIFORNIA AND TO DEFENDANT, AND HIS COUNSEL OF RECORD:

Petitioner is serving an indeterminate prison term of 16 years to life with the possibility of parole, based on his 1985 conviction for second degree murder with a knife use enhancement. Having been found unsuitable for parole on at least ten prior occasions, he now challenges the current (3/7/07) decision of the Board of Parole Hearings (the Board) on habeas corpus.[1]

### Circumstances of the Commitment Offense

The circumstances of the offense which were read into the record at the 3/7/07 hearing show that in 1982, petitioner's friend (Cruz) had appeared at a party (uninvited) and attempted without success, to persuade his girlfriend to leave. Cruz left and

---

[1] The current petition refers to the Board of Parole Hearings' failure to comply with this court's 4/13/07 order requiring the Board to provide him with a proper record of his 2006 parole denial hearing. (Orange County Superior Court Case #M-10932). However, because the issue of the Board's compliance with this court's prior order is not before this court in this proceeding, it will not be addressed herein.

returned hours later accompanied by several others, including petitioner. When the girlfriend still refused to leave, a fight erupted which escalated into a brawl, during which petitioner stabbed the victim (Gomez) who later died from multiple wounds. Several others were also injured, including defendant, who sustained a stab wound to the arm for which he obtained hospital treatment. At the parole suitability hearing petitioner admitted the offense, admitted being armed with a knife, but claimed to have committed the offense only after having been attacked at knifepoint by the victim. He also admitted having been drunk at the time, having consumed at least two or three six-packs. His blood alcohol level was .16%.

Petitioner's disciplinary history in prison was exemplary, consisting only of a minor "128" in 1986. He has worked in vocational dry cleaning for years. He admits to being an alcoholic, has attended AA since 1988 and stated his intention to continue attending AA if released. However, the record showed that his AA attendance from 2000 through 2005 was minimal, although he resumed regular attendance in 2006. Because he is an illegal alien, he will likely be deported to Mexico and plans to work on his parents' farm. However, it has not been definitively determined if AA or comparable programs are available where he plans to live. The most recent psychological assessment was favorable.

### The Board's Decision

The 3/7/07 decision found petitioner unsuitable for parole on the ground that he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. The decision was based on the following grounds:

1) <u>The commitment offense</u> —It was carried out in a very cruel, cold and callous manner, in that petitioner and his friends crashed a party, engaged in a fight where petitioner stabbed the host, who was unarmed. It was carried out in a manner which demonstrated a very callous disregard for human suffering in that the victim was stabbed multiple times, after which petitioner and his friends fled. Witnesses saw petitioner grab the victim by the hair, pull him forward and stab him in the chest. The motive was extremely trivial in relation to the offense.

2) <u>Prior criminal history/social history</u> —Petitioner had a history of alcohol abuse and a prior criminal history. His prior record included convictions for drunk driving

(1978) and assault (1981). In the latter offense, he threatened a girlfriend with a knife. In both prior offenses, he received probation, but failed to profit from society's previous attempts to correct his criminality. The Board found an escalating pattern of criminal conduct which culminated in the commitment offense. Further, although the 2005 psychological report was generally favorable, the Board viewed it as inconclusive because, although it stated that petitioner would pose a minimal risk to society if he abstained from alcohol consumption, it also stated that petitioner's risk would increase significantly if he were to resume drinking.

3) <u>Parole Plans</u> – As an illegal alien, petitioner will probably be deported, and plans to live and work on his parents' farm in Puebla, Mexico. Although the Board acknowledged this to be a valid offer of employment and residence, it pointed out that because petitioner had admitted having been raised in a culture of alcohol abuse, it expressed concern that his plan to return to this environment would make it difficult to maintain sobriety after his release.

4) <u>Self Help</u> – The Board found that more self-help was needed so that petitioner will learn to face, discuss understand and cope with stress in a nondestructive manner, and to understand the reasons for the commitment offense. The Board expressed skepticism about petitioner's version of the commitment offense, and criticized his failure to regularly attend AA from 2000 through 2005, when it should have been apparent that substance abuse prevention was a top priority based on its connection to the commitment offense.

5) <u>Opposition from the People</u> – The Orange County District Attorney and the Anaheim Police Department indicated their opposition to petitioner's release.

**Contentions on Habeas Corpus**

1) Petitioner claims that the decision finding him unsuitable for parole was unsupported by the evidence, and that the Board's continued reliance on the immutable circumstances of the commitment offense and his prior criminal history violates due process.

2) Petitioner claims that the decision was arbitrary and capricious, in that it was pre-determined, thereby violating his due process rights.

**Standard of Review**

Pen.C. § 3041(b), which provides that the Board of Prison Terms shall set a release date, also allows it to decline to do so if it determines that the commitment offense, or the timing and gravity of current and past offenses, is such that public

safety considerations require a longer period of incarceration. The California Supreme Court has construed Pen.C. § 3041(b) to mean that the Board must grant parole unless it determines that public safety requires a lengthier period of incarceration and may decline to set a parole date if it concludes on relevant grounds, with support in the evidence, that the grant of a parole date is premature for reasons of public safety. ((*In re Rosenkrantz*, (2002) 29 Cal.4th 616, at 654; *In re Dannenberg* (2005) 34 C4th 1061 at page 1071)

In arriving at its decision, the Board must consider "the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release." (Title 15 Cal. Code of Regulations § 2402(b))

Once it has considered all relevant factors, the Board's discretion in determining parole suitability is extremely broad and almost unlimited, but not absolute. (*In re Dannenberg* (2005) 34 C4th 1061 at 1082; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 655; In re Powell (1988) 45 Cal.3d 894, 902) The Board's decision must reflect an individualized consideration of the specified criteria and cannot be arbitrary or capricious. However, the precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the Board. If the decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is *some* evidence in the record that supports the decision. (*In re Rosenkrantz*, (2002) 29 Cal.4th 616, at 677.) The Board has very broad discretion to identify and weigh the factors relevant to predicting "by subjective analysis whether the inmate will be able to live in society without committing additional antisocial acts." (*In re Fuentes* (2005)135 Cal.App.4th 152, at 160)

## Application of Standard of Review

Petitioner claims that the Board's finding of unsuitability is unsupported by the record because there is no evidence that the offense was carried out in a very cruel, callous manner. He argues that because the offense was the result of a fight between himself and the victim, it did not exceed the minimum elements of second degree murder. (Citing Rosenkrantz and Dannenberg, supra) Comparing his offense to those described in recent Court of Appeal decisions in which individuals have been found suitable for parole, he claims that his commitment offense is far less egregious. (Citing *In re Lee* (2006) 143 CA4th 1400; *In re Elkins* (2006)144 Cal.App.4th 475; *In re Scott* (2005) 133 Cal.App.4th 573 and other recent cases) For this reason, he asserts that the Board's decision is without evidentiary support.

It is unnecessary for this court to determine whether petitioner's commitment offense alone would have supported the Board's decision herein, because the unsuitability determination herein was not limited solely to the commitment offense, but was instead based on additional factors which are supported by the evidence.

The transcript of the 3/7/07 parole suitability hearing indicates that the Board of Parole Hearings addressed the factors required by law and provided an individualized consideration of these factors as they related to petitioner. Therefore, his claim that the result was pre-determined, arbitrary and capricious is unfounded.

A major reason for the Board's conclusion that petitioner still represents a threat to public safety involved its concern that petitioner had not shown that he would abstain from alcohol abuse if released. Petitioner was admittedly drunk at the time of the offense, and an admitted alcoholic who began drinking at age 15. His alcohol abuse also contributed to his prior criminal record. The 2005 psychological assessment stated petitioner's Axis 1 Diagnosis as "Alcohol Abuse in full institutional remission" and identified his foremost risk factor as the potential for alcohol relapse. The report's conclusion that petitioner posed a minimal risk to the community if released was expressly conditioned upon his continued abstention from alcohol use and his continued involvement with alcohol recovery activities.

The factors relied on by the Board in denying parole (i.e., petitioner's

-5-

commitment offense, criminal history, social history, parole plans and self-help issues) are connected to his alcoholism. Because his threat to society if released is directly related to his permanent abstention from alcohol use, the Board's conclusion that he would still pose a threat to society if released, based the aforementioned deficiencies in this area (including but not limited to his failure to regularly attend AA from 2000 through 2005), is supported by the record. Consequently, the denial of parole is supported by "some evidence" and was not an abuse of discretion. (In re Rosenkrantz (2002) 29 Cal.4th 616)

## Disposition

For the foregoing reasons, petitioner has failed to establish a prima facie case for relief, and the petition for writ of habeas corpus is therefore denied. (People v. Romero (1994) 8 Cal.4th 728, 737; In re Clark (1993) 5 Cal.4th 750, 769, fn. 9.)

DATED: 8/10/07

_____
JUDGE OF THE SUPERIOR COURT

R. M. KING