# EXHIBIT 5

Isidro Romero D-07204
San Quentin State Prison 3-N-06
San Quentin, CA 94964

**In Pro Se**


## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA


| | |
|---|---|
| In re | ) Case No. |
| | ) |
| ISIDRO ROMERO | ) (Ct. of Appeal No. G039238) |
| | ) |
| On Habeas Corpus. | ) |
| | ) |
| ——————————— — — ) | |

### PETITION FOR REVIEW

**To the Honorable Ronald M. George, Chief Justice, and the Honorable Associate Justices of the Supreme Court of California:**

Petitioner Isidro Romero respectfully petitioner this Court for review[1] of the unpublished decision of the Court of Appeal, Fourth Appellate District filed on September 20, 2007, summarily denying Petitioner's petition for writ of habeas corpus. A copy of the decision attached to this petition. Romero did not petition for rehearing in the court of Appeal Because the summary denial was final upon filing. (Cal. Rules of Ct. Rule 8.264 and 8.500) Exhibit "A"

---

1. Exhibits are not included in this petition for review except for Appellate Court Denial.

## ISSUES PRESENTED FOR REVIEW

1. How many time can the Board of Parole hearings rely on the commitment offense as a factor supporting a decision to deny parole when the elements of the commitment offense do not meet this Court's definition of 'particularly egregious' standard?

A. Does the fact that Petitioner stabbed the victim once, or even four times, constitute an especially heinous or callous crime that prohibits the finding of suitability?

B. If the commitment offense is 'particularly egregious' for a second degree murder, and Petitioner the instant Petitioner has already served time for a first degree murder, how many more times can the exception factor be used to continue to deny Petitioner parole, after he has already met all the Board's recommendations?

3. Can the Board rely on the same factors that went in to formulating the guidelines for setting terms as the stated reason for denying parole without violating due process?

4. Whether the Superior Court's decision was a reasonable determination of facts when it upheld the Board's finding that Petitioner had not consistently participated in Alcoholics Anonymous (AA) although Petitioner has participated in AA for several years and has made plans to attend AA when paroled to Mexico?

A. Whether Petitioner's degree of participation in AA a factor that would constitute a denial of parole, although Petitioner has located an AA group close to his place of residents in Mexico?

### GROUNDS FOR GRANTING REVIEW

Pursuant to California Rules of the Court Rule 8.264 and 8.500 (b) (1), Petitioner respectfully asks this Court to grant review to settle important question of law with Federal Constitutional implications. Moreover, Petitioner cannot proceed to the Federal District Court (O'Sullivan v. Boerckel (1999) 526 U.S. 838, 842-848 [119 S.Ct. 1728, 144 L.Ed]

### NECESSITY FOR REVIEW

The Board of Parole Hearings holds suitability hearings for inmates serving term-to-life sentences. The Board is required to weigh a number of factors in order to determine whether parole of the inmate will pose an **"unreasonable risk of danger"** to public safety. At suitability hearings, when the factors are weighed and parole is denied the hearing panel is required to state the reason and recommend direction the inmate should take to be found suitable for parole in the future. This Petitioner is such an inmate. Petitioner has consistently fulfilled the Board's requirements from previous parole consideration hearings and yet is continuously being denied parole primarily on the commitment offense and pre-offense behavior, which are two factors that could never change.

Petitioner's offense is one for which parole is to be granted. If Petitioner s offense is 'particularly egregious for

iii.

a second degree murder, and Petitioner has now served enough
time for a first degree murder, than Petitioner petition is ripe
for this Court to review. as it stated in In re Rosenkrantz 29
Cal.4th 616. This Court held in Rosenkrantz that that prisoner's
offense was particularly egregious for a second degree murder,
however when that prisoner served enough time for a first
degree murder he could seek relief in this Court. Petitioner
meets such finding.

Furthermore, Petitioner has been to three hearing
regarding his parole suitability within the last 12 months at the
time of filing this habeas petition. At Petitioner's 2006 parole
suitability hearing he received a split decision, which he
appealed and was given an Order to Show Cause by the Orange
County Superior Court. After that court partially ruled in
Petitioner's favor, Petitioner never heard from that court for
its final decision (See page one of petition attached petition).
/////////////////////
/////////////////////
/////////////////////

iv.

## INTRODUCTION

On March 7, 2007 Petitioner Isidro Romero (Petitioner) appeared before a Board of Parole Hearings (Board) for consideration for parole. Petitioner was denied parole for one year.

On April 20, 2006 Petitioner appeared before a Board hearing panel for parole consideration and received a split decision. Because of a split decision, it went before the full Board for an Enbanc Hearing, and Petitioner was denied parole for one year. Petitioner filed a petition for Writ of Habeas Corpus and claimed that the Enbanc hearing did not comport with the California Code of Regulations Title 15 (CCR Title 15) §§ 2254 and 2255. This Court issued and Order to Show Cause, (Case Case No. M-10932) and ordered the Board to answer why it should not be required to hold a new Enbanc hearing in compliance with all applicable statutes and regulations including but not limited to §§ 2254, 2255. This Court's order stated: "The order to show cause is limited to the above issue, as the court cannot evaluate the merits of the matter without an adequate record." The Board conceited and again held a new Enbanc Hearing, in which Petitioner was again denied parole. It has been over 60 days and Petitioner has not yet received a copy of the Enbanc hearing transcripts. Petitioner has enquired to this Court's appointed counsel as to the status of the above mentioned case. (No. M-10932) Petitioner s counsel did not respond. Petitioner submitted this petition in the superior court and was denied. See Exhibit "D"
//////////////////

1

## CONTENTION

### I.

### PETITIONER'S STATE AND FEDERAL DUE PROCESS RIGHTS WERE VIOLATED WHEN THE BOARD DENIED PETITIONER PAROLE WITHOUT "SOME EVIDENCE"

Petitioner appeared before the Board for parole consideration on March 7, 2007, and was denied parole for one year. The Board stated that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. The Board stated:

> The Panel finds that the commitment offense was carried out in a very cruel, very cold and callous manner, in that this inmate along with his friends, his crime partners, decided to go over the victim, Mr. Gomez's house and basically crash the party....
>
> It was carried out in a manner that demonstrated a very callous disregard for human suffering. The victim sustained anywhere from four to eight, we're not exactly sure, but based on the Appellate decision I read, it stated eight.
>
> The motive of the crime was extremely trivial in relation to the offense and, actually based on everything that we have read, this Panel does not understand what motivated , what the true motivation for Mr. Gomez losing his life that evening truly was.

(Exhibit "A" p 1-2)

The overarching factor regarding parole suitability is whether a prisoner is a current threat to society. There is absolutely no evidence to support the Board's determination that Petitioner poses a current threat to public safety. On the contrary, the facts clearly prove that Petitioner does not pose a risk of dan[g]er to society.

The Board denied parole stating that the commitment

2

offense was carried out in a very cruel, very callous manner.
If the Board is going to rely on the commitment offense, than
the commitment offense must meet the standard set forth in <u>In
re Rosenkrantrz</u>, 29 Cal.4th 616, 683; 128 Cal.Rptr.2d 104, 161
(2002), which states that denial of parole based on the nature
of the offense could raise due process violations, if no
circumstances of the commitment offense was more than the
minimum necessary to commit the offense. In <u>In re Dannenberg</u>,
34 Cal.4th 1061, 1095; 23 Cal.Rptr.3d 417, 440 (2005), the
California Supreme Court further held that the Board could
deny parole if the crime is "more than the minimally necessary
to convict him of the offense for which he is confined." When
compared to this evolved standard set forth in these two
cases, Petitioner's offense does not even compare to either
one. Petitioner's commitment offense was a result of fight
between Petitioner and the victim. Petitioner did not use more
than the necessary force to sustain a conviction. Petitioner
was also stabbed (Exhibit "A" p. 16) during his fight with the
victim. Petitioner stabbed the victim 4 times. (See Exhibit
"B")

   <u>Recently several state cases were decided where these</u>
prisoners were ordered released, or ordered back to the Board
for a new suitability hearing because they did not meet  the
standard set forth in <u>Rosenkrantz</u>, or <u>Dannenberg</u>.

   In <u>In re Smith</u>, (2003) 109 Cal.App.4th 489. that prisoner
was a drug dealer who was convicted for shooting, beating, and
drowning of another drug dealer 15 years before he was found
suitable for parole.

3

In In re Scott, (2005) 133 Cal.App.4th 572, 579, Scott drove to his wife's lover's house and shot the lover in the head with a rifle.

In In re Wen Lee, (2006) 143 Cal.App.4th 1400, 1404, Lee shot a man that owed him money after the man refused to pay him, wounding him and killing the debtor's wife.

In In re Weider, (2006) 145 Cal.App.4th 570, 575-576, Weider, another distraught husband, took a gun and shot the man who was living with his estranged wife, killing that man and wounding two others. The shooting took place in a restaurant.

In In re Elkins, (2006) 144 Cal.App.4th 475, (first degree murder) killed, a man he owed money to for drugs, so he could rob him. Elkins repeatedly beat his victim with a baseball bat. Elkins was on probation at the time.

Recently, just in the last month or so, a few other state court cases were decided.

In In re SANDRA DAVIS LAWRENCE, Case No. B190874, (5-22-07) (first degree murder) Lawrence killed her lover's wife because she was an obstacle in the way. Lawrence shot her victim 4 times, and than stabbed her victim with a potato peeling. That court ruled that the Governor's finding that Lawrence's offense was "shockingly vicious use of lethality" and exceptionally callous disregard for human suffering," was inconsistent with the evidence.(In re Lawrence, Case  No. B190874 p  53)

In In re DAVID BARKER, Case No. A1 4686 (5-24-07), Barker participated in the killing of his friend Barry Braeseke's parents and grandfather. Braseseke killed his parents and

4

Barker killed Braeseke' grandfather. The <u>Barker</u> court found that Barker's murder of the grandfather did not involve any of the characteristics of a first degree murder. Nor that Barker's involvement in three murders made him a threat to public safety. Barker was convicted of two second degree murders and one first degree murder. (In re Barker Case No. A114686 (5-24-07) p. 28-29).

The federal court found that the original case in which the 'particularly egregious' standard was set did not fit that criteria after a long period of time.

In <u>Rosenkrantz v. Marshall</u>, (C.D. 2006) 444 F.Supp.2d 1963, the Central District ordered Rosenkrantz released. Rosenkrantz killed a young man after that man outed him as a homosexual. Rosenkrantz bought a gun and practiced with it and even planned his killing.

In <u>Martin v. Marshall</u>, (N.D. Cal. 2006) 431 F.Supp 2d 1038, 1040, Martin was ordered released. Martin was a drug user who shot his drug dealer who he owed money to, and two other restaurant patrons.

The <u>Lawrence</u> court stated:

> All of the above murders involved at least as shockingly vicious use of lethality" and "exceptionally callous disregard for human suffering" as did Lawrence's murder of her paramour's wife. Several resulted in the killing or wounding of multiple victims. several had economic as opposed to emotional motives, and several prisoners were involved in other criminal activities at the time of the offense. Yet the state appellate courts or federal courts found these earlier commitment offenses failed to provide some evidence" of the perpetrator's present dangerousness if released to the outside world.

(Lawrence, supra at p. 55)

5

## A. THE CONTINUED RELIANCE ON IMMUTABLE FACTORS TO DENY PAROLE VIOLATES DUE PROCESS

In In re Scott, supra, at pp. 594-595 that court found that held that the commitment offense is one of only two immutable factors that will never change. The Scott court further echoed a federal court finding that "[R]eliance on such an immutable factor 'without regard to or consideration of subsequent circumstances' may be unfair, and runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.' (See Biggs v. Terhune, (9th Cir. 2003) 334 F.3d 910, 915). The Scott court went on to hold that the predictive value of the commitment offense may be very questionable after a long period of time. **"Thus, denial of release based solely on the basis of the gravity of the gravity of the commitment offense warrants especially close scrutiny."** In Irons v. Carey, 358 F.Supp.2d 936 found that the Board had relied on the commitment offense four prior times,[1] and that under those circumstances continued reliance on those factors at his 2001 (4th

---

[1]. Recently the United States Ninth Circuit Court of Appeals held in Irons, supra, that the Board could rely on the commitment offense to deny parole. However, the Ninth Circuit noted: **"All we held in those cases and all we hold today**, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." The Ninth Circuit's holding is based on an erroneous fact. A prisoner appears before parole suitability 13 month prior to their eligibility date. Irons had appeared to his forth hearing at the time of filing (seven years after his minimum term, 22 years with good time credit applied, which is how total time is calculated.)

suitability hearing) violated <u>Irons</u> due process. The Irons
Court further held that "continuous reliance on unchanging
circumstances transforms an offense for which California
law provides eligibility for parole into a de facto life
imprisonment without the possibility of parole." <u>Irons</u>, <u>supra</u>,
at 947. Petitioner fits this finding to a 'T', since
Petitioner has been to atleast 10 parole consideration
hearings on a fifteen years to life sentence.

## B. THE PREDICTIVE VALUE OF THE COMMITMENT OFFENSE AFTER 20 YEARS DISSIPATES.

In an unpublished opinion, the Sixth Appellate District
for California quoted in <u>In re Wieder</u>, 145 Cal.App.4th 470 The
court noted that Weider:

> "has served so much time that, with custody credits,
> he is within the matrix for first degree murder. .
> **[I]t should be self evident that after an inmate has
> served the equivalent of 25 years, whether his actions
> were more than the minimally necessary for a second
> degree conviction... is no longer the appropriate
> question.** [The Board's] position, that inmates who
> were convicted of second degree may forever be
> denied parole based on some modicum of evidence
> that their acts rose to the level of a first,
> without acknowledging the fact that they have
> already served the time for a first, should be
> seen as so ridiculous that simply to state it is
> to refute it."

(See In re Wieder, 145 Cal.App.4th 470  479 (2006).

Petitioner in this instant action is within the first
degree murder matrix. Petitioner has serve the equivalent of
29 years after good time is applied, which puts Petitioner
almost beyond the first degree murderer matrix. **"Thus, denial
of release based solely on the basis of the gravity of the
gravity of the commitment offense warrants especially close
scrutiny."** (In re Scott, supra at pp. 594-595)

7

CONTENTION

II.

THE DENIAL OF PAROLE BY THE BOARD OF PAROLE
HEARINGS WAS ARBITRARY AND CAPRICIOUS AND VIOLATES
PETITIONER'S STATE AND FEDERAL DUE PROCESS RIGHTS

Petitioner's March 7, 2007 parole consideration hearing
was an arbitrary and capricious decision by the Board. In In
re Rosenkrantz, 29 Cal.4th 616, 665 held that a parole
decision with no basis in fact and not supported by any
evidence in the record would be arbitrary and capricious, and
it would affect a liberty interest and violate principles of
due process of law.

Petitioner's claim is supported by when a historical
review of past parole hearings are considered. On April 20,
2006 Petitioner appeared before the Board for parole
consideration and received a split decision which was heard
Enbanc and Petitioner was denied parole. After the Orange
County Superior Court issued an Order to Show Cause regarding
CCR §§ 2254, 2255. (Case No. M- 0932) Respondent conceded and
Petitioner was again taken to another Enbanc hearing via
video-conference. Prior to the Respondent conceding Petitioner
also appeared before the Board for parole consideration as a
result of being found unsuitable by Enbanc on 6-20-06.

Petitioner has been to three hearings with in one year,
all regarding parole suitability, and the Board has relied on
the immutable factors, such as the commitment offense. Past
criminal history (escalating pattern of criminal conduct).
Although Petitioner's criminal record consisted of one arrest
for drunk driving, and one arrest for supposedly threatening

8

his ex-girlfriend with a knife. Other reasons the Board

pointed to were psychologist report, however, the psychologist

stated under **XIV** <u>**Assessment**</u> <u>**of**</u> <u>**Dangerousness**</u>:

> A. <u>If released to the outside community</u>:
> Mr. Romero has statistically based static factors for increased violence potential when compared to the average member of the general population. These factors still stand: 1) He is a man. 2) He has committed violence before 3) He is single 4) He has a history of alcohol abuse.

The psychologist further stated:

> **Factors that are likely to lower his risk for violence still stand as well.** These are 1) No history of childhood sociopathy. 2) Increased education. 3) violence risk drops after age forty. 4) He has no motivation for violence and does not endorse any violent ideation, intent or plans. 5) He has remained alcohol free for 15 years and clearly understands that he cannot even drink alcohol. 6) he has never used illegal narcotics 7) There is no evidence of paranoia of a psychotic nature or as a result of a personality disorder.

The Dr. went on to state:

> There are no psychiatric reasons to retain him. [In prison] Mr Romero poses minimal risk to the community on the condition that he continue his alcohol recovery activities. Mr. Romero is man will likely earn the respect and positive regard of others in any community he may live.

(Compare Exhibit "C" p 4-5 and Exhibit "A" pp 52-55.)

The Board also questioned his parole plans in Mexico,

although Petitioner's father a farming business and has

offered Petitioner a place to stay and work. The Board's

findings regarding Petitioner's parole plans in Mexico, and

Petitioner having an Alcoholic Anonymous sponsor. Or the

Clinical Psychologist findings are erroneous and amounts to an

arbitrary and capricious decision. The Board makes it a point

to find reasons to not normally set a parole date, instead of

normally finding reasons for parole.

9

## A. PETITIONER'S 2007 PAROLE CONSIDERATION HEARING WAS ARBITRARY AND CAPRICIOUS BECAUSE IT WAS PRE-DETERMINED.

Concomitant to the guarantee against arbitrary and capricious state action is the right to a fact-finder who has not predetermined the outcome of a hearing. <u>Withrow v. Larkin</u>, 421 U.S. 35 (1975). A fair trial in a fair tribunal is a basic requirement of due process, and this rule applies to administrative agencies which adjudicate as well as to courts; <u>Edward v. Balisok</u>, 35 F.3d 318, 326 (7th Cir. 1994) a Decision-making body "that has prejudged the outcome cannot render a decision that comports with due process." A fair tribunal can not rule the opposite of its earlier ruling, unless it had new evidence than what it used in its first decision. A fair court could not go back and find someone guilty of a crime in a fair trial after it had previously rule that defendant innocent. To make a finding of unsuitability on the same evidence, or more evidence of exemplary conduct, by the same decision-making body can only mean that the unsuitability finding was pre-determined renders it arbitrary and capricious, therefore violating Petitioner's due process.

That is exactly what the Board did Petitioner by subjecting to appear before a parole consideration panel to determine his suitability for parole after having been found unsuitable for parole three times within one year, in light of the fact that Petitioner has continued positive programming. Especially after having been ordered by the court hold an new Enbanc Hearing and provide transcripts of that hearing, when the Board has never held that practice, nor have they yet

10

complied with the Superior Court Order to porvide Enbanc
transcripts.

## CONTENTION

### III.

**THE SUPERIOR COURT DECISION WAS A PERFUCTORY
REVIEW OF PETITIONER'S CLAIMS, FURTHERMORE
THE BOARD VIOLATED THE PETITIONER'S STATE, AND
FEDERAL DUE PROCESS UNDER THE 'AEDPA', WHEN IT
MADE AN UNREASONABLE DETERMINATION OF FEDERAL LAW
UNDER THE ANTI-TERRORIST AND DEATH PENALTY ACT.**

On August 10, 2007 the Orange County Superior Court
made a perfuctory review, and unreasonable determination of
and an unreasonable determination of federal law and facts.

The superior court, in its order denying Petitioner's
habeas corpus petition, stated that the Board's major reason
for finding that Petitioner still posed a threat to public
safety, was their concern that Petitioner had not shown that
he would abstain from using alcohol. The Superior court
stated that the Board's finding constituted "some evidence."

However, when a review of the record, this court will
find that the superior court's decision was based on an
unreasonable determination of facts. The record clearly shows
that Petitioner addressed his alcohol problem. When the Board
found that Petitioner had been attending Alcoholics Anonymous
(AA) since 1988. The Board had also found that there was
sporadic attendance from 2000 to 2006. When the Board asked
Petitioner about this spotty attendance, Petitioner informed
the Board that he had been taking other classes. Petitioner
tried to explain to the Board that the schedules conflicted
with AA and that was the reason for such attendance. (See

11

Exhibit "A" p. 48-49) Furthermore, Petitioner was only
fulfilling the Board's recommendations to continue to upgrade
his program and increase his chances for parole.

Petitioner has overwhelmingly addressed his alcoholism
by continuing to attend AA. Petitioner has also prepared to
continue his sobriety by contacting an AA Program in Mexico,
15 miles from his future place of residence. (See Exhibit "A"
p. 45-51). In a Recent decision Sixth Appellate District
Court of California rejected the Governor's claim regarding a
prisoner's suitability for parole. In <u>In re Smith</u>, 114
Cal. App.4th 343, the Governor claimed that "Smith was
unsuitable for parole because Smith had a long term of drug
use, the inference that Smith's desire for the possibility
that if released Smith might start using drugs again and
engage in violent criminal conduct." Id. at 676. The court
found that there was no evidence that Smith's past desire for
and use of drugs does not by itself reasonably establish that
he would relapse.

> "Moreover, here the record does not contain any
> evidence to support reasonable grounds to believe
> Smith might start using drugs if released. There
> is no evidence that smith's former desire for
> drugs might still be a negative force. The record
> reveals that he has been clean and sober for a
> substantial period of time relative to the duration
> of his abuse. There is no evidence that smith
> denies he had a drug problem or denied he had a
> problem for some period of his incarceration.
> There is no evidence that he refused failed, or
> did poorly in drug treatment programs. And there
> is no evidence that smith ever used any type of
> illicit substance during his incarceration."

(Id. at 676).

There is no evidence in the record that points to

Petitioner still having a problem dealing with recovery. On the contrary the psychologist states that Petitioner is in full remission. Petitioner has taken steps to continue his sobriety when released in his native home land of Mexico. The only instance where it appears that Petitioner ceased participation was when he enrolled in college and the classes were on the same night as AA. It is clear that the Board's decision was an arbitrary and capricious decision without "some evidence." The Superior court's decision was an unreasonable determination of the facts and law. For the aforementioned reasons this court should grant review.


Dated: this 25, day of September 2007.


Isidro Romero
**In Pro Se**

EXHIBIT "A"

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

COURT OF APPEAL-4TH DIST DIV 3
**FILED**

SEP 2 0 2007

| | |
|---|---|
| In re ISIDRO ROMERO <br><br> on Habeas Corpus. | G039238 <br><br> (Super. Ct. No. M11491) Clerk_____ <br><br> O R D E R |

THE COURT:*

The petition for a writ of habeas corpus and request for appointment of counsel are DENIED.

RYLAARSDAM, J.
_____
RYLAARSDAM, ACTING P. J.

--------------------------------------------------------------------------

\* Before Rylaarsdam, Acting P. J., O'Leary, J., and Ikola, J.



# DECLARATION OF SERVICE BY MAIL

I, Noel Valdivia Sr.                    , the undersigned, declare:
         Printed Name of Declarant
I am over the age of 18 years, a citizen of the United States of America, and am not
a party to the cause within.  My residence address is:

                    CDC No. C-29917            Housing  3-N-21
                    San Quentin State Prison
                    San Quentin, CA 94974

On    September    25th   2007 , I served the following document(s):
        Month/Day         Year
   "PETITION FOR REVIEW"

on the parties and at the addresses described below by placing the pleadings in a
sealed envelope, with postage fully prepaid, and presented said item(s) to
Corrections Department staff for mailing in the United States Mail as per the rules
and regulations governing outgoing legal mail at San Quentin State Prison.

| | |
|---|---|
| CALIFORNIA COURT OF APPEALS | OFFICE OF THE ATTORNEY GENERAL |
| FOURTH APPELLATED DISTRICT | DEPARTMENT OF JUSTICE |
| P.O. BOX 22055 | 455 GOLDEN GATE AVE. SUITE 11000 |
| SANTA ANA, CA 92702-2702 | SAN FRANCISCO, CA 94102-7004 |

I swear under penalty of perjury that the foregoing is true of my own personal
knowledge.  Executed on this  25th  day of  September        , 2007   , at
San Quentin, CA, County of Marin.

                         Noel Valdivia Sr.
                         Signature of declarant