IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ISIDRO ROMERO,                          No. C-07-6382 TEH (PR)

    Petitioner,

    v.                                  ORDER DENYING PETITION FOR WRIT
                                        OF HABEAS CORPUS
ROBERT AYERS, Warden

    Respondent.
_____/

    Pro se Petitioner Isidro Romero, a state prisoner incarcerated at San Quentin State Prison, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Parole Hearings' ("BPH") March 7, 2007 decision to deny him parole, which, for the reasons that follow, the Court denies.

I

    Below is a brief factual summary of Petitioner's commitment offense, as set forth in the state appellate court opinion affirming the judgment of the trial court.

> During a party, Sergio Cruz, a noninvitee, attempted to coax one of the guests, Sophia, outside.  Although Cruz and Sophia had previously dated, Sophia refused to leave the house.
>
> Cruz returned hours later accompanied by [Petitioner] and others.  When Sophia still refused to leave with Cruz, catcalls were made until a fight erupted between those inside the house and Cruz and his friends.  During the brawl, witnesses identified [Petitioner] as stabbing Jose Gomez, Sophia's cousin.  [Petitioner], Cruz and the others fled.
>
> Gomez's autopsy revealed he died from eight stab wounds.  [Petitioner] was arrested at a hospital while being treated for cuts and bruises.  Blood tests showed [Petitioner's] blood alcohol level to be .16.
>
> [Petitioner] admitted at trial he accompanied Cruz to the party and was involved in a fight, but denied stabbing anyone.  In addition he admitted drinking beer but denied feeling its effect.

People v. Romero, 153 Cal. App.3d 757, 759 (1984).

On May 16, 1985, Petitioner was sentenced to sixteen-years-to-life in state prison following his conviction by a jury in Orange County of second degree murder with an attached deadly weapon enhancement.  Doc. #6-1 at 23.  His minimum eligible parole date was August 25, 1991.  Id.

On March 7, 2007, Petitioner appeared before BPH for his eleventh parole suitability hearing.  Doc. #6-1 at 21 & 23; Doc. #6-3 at 2.  At the conclusion of the hearing, BPH found Petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison."  Doc. #6-2 at 30.

2

Petitioner unsuccessfully challenged BPH's decision in the state superior and appellate courts. Doc. #6-3 at 2-7; Doc. #6-6 at 2. On November 28, 2007, the California Supreme Court summarily denied Petitioner's Petition for Review. Doc. #6-8 at 2. This federal Petition for a Writ of Habeas Corpus followed. Doc. #1.

Per order filed on July 2, 2008, the Court found Petitioner's claim that BPH violated his due process rights, when liberally construed, colorable under 28 U.S.C. § 2254, and ordered Respondent to show cause why a writ of habeas corpus should not be granted. Doc. #5. Respondent has filed an Answer and Petitioner has filed a Traverse. Doc. ## 6 & 7.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this Court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable

3

1  application of, clearly established Federal law, as determined by
2  the Supreme Court of the United States; or (2) resulted in a
3  decision that was based on an unreasonable determination of the
4  facts in light of the evidence presented in the State court
5  proceeding." 28 U.S.C. § 2254(d).  Under this deferential standard,
6  federal habeas relief will not be granted "simply because [this]
7  [C]ourt concludes in its independent judgment that the relevant
8  state-court decision applied clearly established federal law
9  erroneously or incorrectly.  Rather, that application must also be
10 unreasonable."  Williams v. Taylor, 529 U.S. 362, 411 (2000).

11         While circuit law may provide persuasive authority in
12 determining whether the state court made an unreasonable application
13 of Supreme Court precedent, the only definitive source of clearly
14 established federal law under 28 U.S.C. § 2254(d) rests in the
15 holdings (as opposed to the dicta) of the Supreme Court as of the
16 time of the state court decision.  Williams, 529 U.S. at 412; Clark
17 v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

18         The state court decision to which 28 U.S.C. § 2254 applies
19 is the "last reasoned decision" of the state court.  See Ylst v.
20 Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d
21 1085, 1091-92 (9th Cir. 2005).  Although Ylst primarily involved the
22 issue of procedural default, the "look through" rule announced there
23 has been extended beyond the context of procedural default.  Barker,
24 423 F.3d at 1092 n.3 (citing Lambert v. Blodgett, 393 F.3d 943, 970
25 n.17 (9th Cir. 2004) and Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th
26 Cir. 2003)).

4

Where the state court cited only state law in its decision, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. See, e.g., Lockhart v. Terhune, 250 F.3d 1223, 1230 (9th Cir. 2001); Hernandez v. Small, 282 F.3d 1132, 1141 (9th Cir. 2002) (state court applied correct controlling authority when it relied on state court case that quoted Supreme Court for proposition squarely in accord with controlling authority). If the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts. See Lockhart, 250 F.3d at 1232.

### III

#### A

Under California law, prisoners like Petitioner who are serving indeterminate life sentences become eligible for parole after serving minimum terms of confinement required by statute. In re Dannenberg, 34 Cal.4th 1061, 1077-78 (2005). At that point, California's parole scheme provides that BPH "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." Cal. Penal Code § 3041(b). Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied

5

1  parole if in the judgment of the panel the prisoner will pose an
2  unreasonable risk of danger to society if released from prison."
3  Cal. Code Regs. tit. 15, § 2402(a).  In making this determination,
4  BPH must consider various factors, including the prisoner's social
5  history, past criminal history, and base and other commitment
6  offense, including behavior before, during and after the crime.  See
7  Id. § 2402(b)-(d).

8  California's parole scheme "gives rise to a cognizable
9  liberty interest in release on parole" that cannot be denied without
10 adequate procedural due process protections.  Sass v. California Bd.
11 of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); McQuillion v.
12 Duncan, 306 F.3d 895, 902 (9th Cir. 2002).  It matters not that a
13 parole release date has not been set for the inmate because "[t]he
14 liberty interest is created, not upon the grant of a parole date,
15 but upon the incarceration of the inmate."  Biggs v. Terhune, 334,
16 F.3d 910, 915 (9th Cir. 2003).

17 Petitioner's due process rights require that "some
18 evidence" support BPH's decision finding him unsuitable for parole.
19 Sass, 461 F.3d at 1125.  This "some evidence" standard is
20 deferential, but ensures that "the record is not so devoid of
21 evidence that the findings of [the board] were without support or
22 otherwise arbitrary."  Superintendent v. Hill, 472 U.S. 445, 457
23 (1985).  Determining whether this requirement is satisfied "does not
24 require examination of the entire record, independent assessment of
25 the credibility of witnesses, or weighing of the evidence."  Id. at
26 455.  Rather, "the relevant question is whether there is any

6

evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.

Due process also requires that the evidence underlying BPH's decision have some indicium of reliability. Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904. Relevant to this inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, BPH. See Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1399 (9th Cir. 1987). If BPH's determination of parole unsuitability is to satisfy due process, there must be some reliable evidence to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

B

Petitioner seeks federal habeas corpus relief from BPH's March 7, 2007 decision finding him unsuitable for parole and denying him a subsequent hearing for one year on the ground that the decision does not comport with due process. Specifically, Petitioner claims BPH's decision was not supported by "some evidence." Doc. #1.

As an initial matter, the record shows that BPH afforded Petitioner and his counsel an opportunity to speak and present Petitioner's case at the hearing, gave them time to review documents relevant to Petitioner's case and provided them with a reasoned decision in denying parole. Doc. #6-1 at 29-33; Doc. #6-2 at 30-38.

The record also shows BPH relied on several circumstances tending to show unsuitability for parole and that these

7

circumstances formed the basis for its conclusion that Petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." Doc. #6-2 at 30; see Cal. Code Regs. tit. 15, § 2402(a) (stating that a prisoner determined to be an unreasonable risk to society shall be denied parole).

In rendering its decision, BPH cited the circumstances of the commitment offense, in that it was "carried out in a very cruel, very cold and callous manner" that "demonstrated a very callous disregard for human suffering." Doc. #6-2 at 30. BPH further observed that the motive for the crime "was extremely trivial in relation to the offense." Id. at 31.

Further, BPH expressed concern that from 2000 through 2005, Petitioner's participation in Alcoholics Anonymous was minimal; specifically, he attended once in 2000, not at all in 2001, twice in 2002, once in 2003, and not at all in 2004 and 2005. Doc. #6-2 at 35. BPH noted that during the evidentiary portion of the hearing, Petitioner "admitted that the culture that [he] grew up with[,] . . . [his] father was a heavy drinker and may be an alcoholic and the culture that's surrounding [Petitioner] and the way [he] grew up was that everybody drinks." Doc. #6-2 at 36. Given Petitioner's blood alcohol level at the time of the commitment offense was twice the legal limit, BPH expressed trepidation that if remaining sober "were the top priority in [Petitioner's] life, [his minimal, sporadic attendance at Alcoholics Anonymous from 2000 through 2005] would never happen. [Petitioner] would fully

8

1  understand that continued support in keeping . . . sober is the
2  number one goal in [his] life to survive."  Id. at 35.
3       BPH then made the following findings:

> [Petitioner] need[s] to continue with all types
> of documented self-help in order to face,
> discuss, understand and cope with stress in a
> nondestructive manner.  Until progress is made,
> the prisoner continues to be unpredictable and a
> threat to others.
>
>     And, sir, it's not just stress.  It's
> really do whatever you need to do to get a
> better understanding and to be able to
> communicate with a future panel as to what
> brought you to make the decisions you did that
> evening.  There's a lot of questions and we
> ended up leaving here with more questions than
> what we have answers for.  And that [is] to
> understand what functional alcoholism is.  And
> we really question whether or not, how
> inebriated you were during the life crime, okay?
>
>     So, basically, sir, we're giving you a
> another one year denial.  And I highly recommend
> that you use that time wisely to get additional
> self-help, to get a better understanding of why
> you did the things you did.  We recommend that
> you remain disciplinary-free, and that if
> available, you continue to upgrade vocationally
> and educationally, and also participate in self-
> help.  And update those support letters, okay?

Doc. #6-2 at 37–38.

In a six-page written decision, the state superior court affirmed the decision of BPH to deny Petitioner parole, finding that it was supported by "some evidence."  Doc. #6-3.  The court noted:

> It is unnecessary for this court to
> determine whether petitioner's commitment
> offense alone would have supported the Board's
> decision herein, because the unsuitability
> determination herein was not limited solely to
> the commitment offense, but instead was based on
> additional factors which are supported by the
> evidence.

9

> The transcript of the 3/7/07 parole suitability hearing indicates that the Board of Parole Hearings addressed the factors required by law and provided an individualized consideration of these factors as they related to petitioner. Therefore, his claim that the result was pre-determined, arbitrary and capricious is unfounded.
>
> A major reason for the Board's conclusion that petitioner still represents a threat to public safety involved its concern that petitioner had not shown that he would abstain from alcohol abuse if released. Petitioner was admittedly drunk at the time of the offense, and an admitted alcoholic who began drinking at age 15. His alcohol abuse also contributed to his prior criminal record. The 2005 psychological assessment stated petitioner's Axis I Diagnosis as "Alcohol Abuse in full institutional remission" and identified his foremost risk factor as the potential for alcohol relapse. The report's conclusion that petitioner posed a minimal risk to the community if released was expressly conditioned upon his continued abstention from alcohol use and his continued involvement with alcohol recovery activities.
>
> The factors relied on by the Board in denying parole (i.e., petitioner's commitment offense, criminal history, social history, parole plans and self-help issues) are connected to his alcoholism. Because his threat to society if released is directly related to his permanent abstention from alcohol use, the Board's conclusion that he would still pose a threat to society if released, based on the aforementioned deficiencies in this area (including but not limited to his failure to regularly attend AA from 2000 through 2005), is supported by the record. Consequently, the denial of parole is supported by "some evidence" and was not an abuse of discretion. (<u>In re Rosenkrantz</u> (2002) 29 Cal. 4th 616).

Doc. #6-3 at 6-7.

Although the state superior court cited only state law in its decision denying Petitioner's due process claim, the court

10

correctly identified the "some evidence" standard that applies under federal law; therefore this Court must determine whether the state court applied the standard unreasonably to the facts. See Lockhart, 250 F.3d at 1232.  After a careful review of the record, the Court finds that the state court's conclusion that BPH's decision to deny Petitioner parole was not supported by "some evidence" was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, and it was not based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d); Williams, 354 F.3d at 1106.  The evidence shows Petitioner's commitment offense occurred when he was under the influence of alcohol, with a blood alcohol level twice the legal limit. Petitioner's social history involved a culture where alcohol often was abused; if paroled, Petitioner planned on returning to that very culture.  Based on these considerations, especially when viewed in conjunction with the nature of the commitment offense, this Court cannot say that BPH's finding that Petitioner was unsuitable for parole was "without support or otherwise arbitrary."  See Hill, 472 U.S. at 457.

   Given the evidence before the Court, BPH reasonably concluded that Petitioner was not yet suitable for parole. See, e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and the petitioner's psychiatric reports documenting his failure to complete programming while in prison); Biggs, 334 F.3d at 916 (upholding denial of parole based on gravity of offense and the petitioner's conduct prior to imprisonment);

11

1  **Morales v. California Dep't. of Corrections**, 16 F.3d 1001, 1005 (9th
2  Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995) (upholding
3  denial of parole based on the cruel nature of offense, the
4  petitioner's unstable and criminal history, and his need for further
5  psychiatric treatment).  It is not up to this Court to "reweigh the
6  evidence."  <u>Powell v. Gomez</u>, 33 F.3d 39, 42 (9th Cir. 1994).

                                    IV

         For the reasons set forth above, the Petition for a Writ
of Habeas Corpus is DENIED.  The Clerk shall terminate any pending
motions as moot, enter judgment in accordance with this order and
close the file.


         IT IS SO ORDERED.

DATED    03/26/10              _____
                               THELTON E. HENDERSON
                               United States District Judge

G:\PRO-SE\TEH\HC.07\Romero-07-6382-bph denial.wpd

**12**